IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **KAREN L.,**[1]<br><br>　　　　Plaintiff,<br><br>v.<br><br>**COMMISSIONER OF SOCIAL SECURITY,**<br><br>　　　　Defendant. | Case No. 3:20-CV-609-NJR |

# MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

In accordance with 42 U.S.C. § 405(g), Plaintiff seeks judicial review of the final agency decision denying her application for Disability Insurance Benefits (DIB) pursuant to 42 U.S.C. § 423.

## BACKGROUND

Plaintiff applied for DIB in October 2017, alleging a disability onset date of January 1, 2016. After holding an evidentiary hearing, an Administrative Law Judge ("ALJ") denied the application on July 5, 2019 (Tr. 10-19). The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final agency decision subject to judicial review (Tr. 1). Plaintiff exhausted administrative remedies and filed a timely complaint with this Court.

---

[1] Plaintiff's full name will not be used in this Memorandum and Order due to privacy concerns. *See* Fed. R. Civ. P. 5.2(c) and the Advisory Committee Notes thereto.

## ISSUES RAISED BY PLAINTIFF

Plaintiff raises the following issues:

1. The ALJ erred by failing to build a logical bridge between the evidence and his Residual Functional Capacity ("RFC") determination.

2. The ALJ failed to properly evaluate whether Plaintiff's hidradenitis suppurative met or equaled the relevant listing.

## LEGAL STANDARD

To qualify for DIB, a claimant must be disabled within the meaning of the applicable statutes. Under the Social Security Act, a person is disabled if he or she has an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a).

To determine whether a claimant is disabled, the ALJ considers the following five questions in order: (1) Is the claimant presently unemployed? (2) Does the claimant have a severe impairment? (3) Does the impairment meet or medically equal one of a list of specific impairments enumerated in the regulations? (4) Is the claimant unable to perform his or her former occupation? and (5) Is the claimant unable to perform any other work? *See* 20 C.F.R. § 404.1520.

An affirmative answer at either step 3 or step 5 leads to a finding that the claimant is disabled. A negative answer at any step, other than at step 3, precludes a finding of disability. The claimant bears the burden of proof at steps 1–4. Once the claimant shows an inability to perform past work, the burden then shifts to the Commissioner to show

the claimant's ability to engage in other work existing in significant numbers in the national economy. *Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001).

It is important to recognize that the scope of judicial review is limited. "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. § 405(g). Accordingly, this Court is not tasked with determining whether or not Plaintiff was, in fact, disabled at the relevant time, but whether the ALJ's findings were supported by substantial evidence and whether any errors of law were made. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). The Supreme Court defines substantial evidence as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal citations omitted).

In reviewing for "substantial evidence," the entire administrative record is taken into consideration, but this Court does *not* reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the ALJ. *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019). While judicial review is deferential, it is not abject; this Court does not act as a rubber stamp for the Commissioner. *See Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010), and cases cited therein.

### DECISION OF THE ALJ

The ALJ followed the five-step analytical framework described above. He determined that Plaintiff had not worked at the level of substantial gainful activity since the alleged onset date. She was insured for DIB through December 31, 2016. She was 54 years old on the alleged date of disability. The ALJ found that Plaintiff had severe

impairments of diabetes mellitus, chronic obstructive pulmonary disease, hidradenitis suppurativa, and obesity (Tr. 13).

The ALJ found that Plaintiff had the RFC to do light work "except no climbing ladders, ropes, or scaffolds; occasional climbing of ramps and stairs; occasional climbing, ramps or stairs; stooping, kneeling, crouching, and crawling; avoiding all exposure to extreme temperatures and exposure to moderate levels of irritants" (Tr. 14).

The ALJ found that Plaintiff had no past relevant work (Tr. 18). Based on the testimony of a vocational expert ("VE"), the ALJ found that Plaintiff was not disabled because she was able to do other jobs that exist in significant numbers in the national economy.

### EVIDENTIARY RECORD

The Court has reviewed and considered the entire evidentiary record in preparing this Memorandum and Order. The following summary of the record is directed to the points raised by Plaintiff.

**I. Evidentiary Hearing**

Plaintiff was represented by an attorney at the hearing in June 12, 2019 (Tr. 24).

Plaintiff testified that she has COPD, diabetes, neuropathy, and a bulging disc in her back (Tr. 35-36). Plaintiff explained she stopped working at her workers' compensation insurance business in January 2016 because she would be on the phone talking a lot, but her coughing would be so bad that she would have to hang up on people and call them back (Tr. 36-37). As for Plaintiff's diabetes, she explained that the longer she sits with her feet on the ground, the more her feet become numb (Tr. 42). Plaintiff

continued explaining that she can only stand on a good day for maybe 15 minutes before she needs to sit down (Tr. 43). When asked whether walking is better, Plaintiff explained that she cannot walk "too, too far" (Tr. 43). Plaintiff also noted her lower back impacts her ability to stand, sit for long periods, and breathing (Tr. 46).

Plaintiff's counsel then questioned about her hidradenitis suppurativa (Tr. 51). Plaintiff testified she started getting treatment in 2015 (Tr. 53). Plaintiff also testified to osteoarthritis in the right knee (Tr. 55-56).

A vocational expert (VE) also testified. The ALJ asked him a hypothetical question which corresponded to the RFC assessment—would there be light work for an individual with no past relevant work with at least a high-school education, and closely approaching advanced age (Tr. 64). The VE testified that there are approximately 315,000 light unskilled hand packer positions nationally, approximately 196,000 light unskilled production worker positions nationally, and approximately 440,000 light unskilled cleaner positions nationally (Tr. 64-65).

## II. Relevant Medical Records

### A. *Diabetic Neuropathy*

In March 2016, Plaintiff saw Anita Sandhu, M.D. ("Dr. Sandhu"), an endocrinologist. Dr. Sandhu noted that Plaintiff's symptoms did not include burning of extremities (Tr. 229). During the exam, Dr. Sandhu noted that Plaintiff's monofilament exam was abnormal (Tr. 232). Plaintiff went back to Dr. Sandhu's office one month later, in April 2016 (Tr. 235). Again, Plaintiff's symptoms did not include burning of extremities or foot ulcers (*Id.*). Plaintiff was instructed to increase physical activity and encouraged

to exercise (Tr. 239).

In May 2016, Plaintiff visited Dr. Sandhu's office for her diabetes (Tr. 241). Plaintiff's symptoms included dysesthesias and numbness, but did not include burning of extremities or foot ulcers (*Id*). Also, Plaintiff's monofilament exam was abnormal (Tr. 244).

By June 2016, Plaintiff visited John Cumberledge, M.D. ("Dr. Cumberledge"), Plaintiff's primary care physician. Dr. Cumberledge noted that Plaintiff "continues to have issues of lower leg numbness and weakness especially at nighttime" (Tr. 305). Plaintiff also stated at the visit that she took a fall eight days ago and continues to have swelling and bruising in her legs (*Id*.).

Plaintiff's July 2016 exam with Dr. Sandhu was similar to the previous exams (Tr. 247). Plaintiff's symptoms included dysesthesias and numbness, but did not include burning of extremities or foot ulcers (Tr. 249). Plaintiff's monofilament exam also was abnormal (Tr. 250).

In September 2016, Dr. Cumberledge examined Plaintiff for ear pain (Tr. 324). Dr. Cumberledge noted Plaintiff's active problems include "lower extremity pain, anterior, left" (Tr. 325). Also, he found that Plaintiff's gait was normal (Tr. 327).

In October 2016, Dr. Cumberledge examined Plaintiff two times. The first time, Plaintiff discussed pain and had labs drawn (Tr. 299). Plaintiff complained of pain in her hips, arms, shoulders and knees (*Id*.). During this visit, Dr. Cumberledge noted that Plaintiff's gait was normal (Tr. 303). Later that month, Plaintiff complained of left lower shin pain, tenderness, and a small superficial knot for over one week (Tr. 319). Again,

Plaintiff's gait was normal, but Dr. Cumberledge's inspection of joints, bones, and muscles noted abnormal findings (Tr. 323).

During Plaintiff's December 2016 exam with Dr. Sandhu's office, Plaintiff's symptoms included burning of her extremities, dysesthesias with numbness, tingling, and burning and sharp pain in feet (Tr. 253). Also, Plaintiff's monofilament exam was abnormal (Tr. 257).

 B. *Hidradenitis suppurativa*

In December 2015, Plaintiff visited Dr. Cumberledge regarding the impact of taking medication for hidradenitis (Tr. 311). By March 2016, Plaintiff was diagnosed by Steve Musick, M.D. ("Dr. Musick") (Tr. 445). During the consultation, Dr. Musick explained the treatment options included laser hair removal.

In June 2016, Plaintiff visited Dr. Musick's office for her hidradenitis (Tr. 414). At the visit, medical records showed bilateral axillae (Tr. 415). By August 2016, Plaintiff still had bilateral axillae (Tr. 419). In October 2016, Plaintiff still had issues with her hidradenitis when she saw Dr. Musick (*Id.*).

DISCUSSION

**I. Logical Bridge Between the Evidence and RFC determination**

Plaintiff first contends that the ALJ failed to properly evaluate the RFC because the evidence supports a finding that she was limited to sedentary work on or before her date last insured on December 31, 2016 (Doc. 24, p. 4). Specifically, "Plaintiff contends she is unable to sustain light work, . . . [because of] painful diabetic neuropathy in her bilateral legs" (*Id.*).

Besides relying on the visits at Dr. Sandhu's office, Plaintiff points to the medical source statement from Amanda Kilzer, FNP-C, completed on October 25, 2018. Plaintiff notes that Ms. Kilzer "had been treating Plaintiff for more than two (2) years for diabetes mellitus and chronic neuropathy in the feet [and] Nurse Kilzer confirmed Plaintiff can stand/walk less than two (2) hours in an eight-(8) hour workday, she must change positions at will from sitting, standing and walking and she needs unscheduled breaks" (*Id*. at p. 6).

Plaintiff concludes by arguing "[t]his opinion is consistent with Plaintiff's testimony, that she cannot sustain light work, and with the objective evidence of abnormal monofilament tests" (*Id*.). Thus, according to Plaintiff, "[s]ubstantial evidence shows Plaintiff cannot sustain light work and, as a result, she meets the requirements to qualify for Social Security disability set forth in FRID Rule 201.12" (*Id*.).

The ALJ explained that Plaintiff's neuropathy "did not meet the medical listing for diabetic peripheral neuropathy on or before the date last insured, because the objective medical evidence of record does not demonstrate persistent disorganization of motor function in two extremities resulting in sustained disturbance of dexterous movements or gait and station" (Tr. 14). The ALJ continued pointing to the medical evidence from Dr. Cumberledge, which demonstrates that "[h]e saw the claimant on June 17, September 6, and October 11 and 26 in 2016" (Tr. 15). These "[p]hysical examinations were unremarkable except for obesity" (*Id*.).

The ALJ did not stop there, but continued noting that Plaintiff saw Dr. Sandhu on March 30, April 13, May 11, July 12, and December 12. The ALJ noted that the March 30

Page **8** of **13**

"[p]hysical examination was normal except for abnormal monofilament findings on diabetic foot examination and obesity with a height of 5'6 tall and weight of 222 pounds, a body mass index (BMI) of 35.83, which represents medically determinable obesity (BMI of 30 or greater)" (*Id*.). "Physical examination on April 13 was normal except for obesity." (*Id*.). Then "[s]ubsequent 2016 examinations were unremarkable except for obesity and abnormal monofilament test examination for complaints of type 2 diabetes with symptoms feet burning, numbness, increased fatigue, and weight gain" (*Id*.). The ALJ continued noting that "[a]gain, physical examination findings were normal except for obesity and abnormal monofilament testing" (*Id*.).

The Seventh Circuit has "repeatedly held that although an ALJ does not need to discuss every piece of evidence in the record, [however] the ALJ may not analyze only the evidence supporting her ultimate conclusion while ignoring the evidence that undermines it." *Moore v. Colvin*, 743 F.3d 1118, 1123 (7th Cir. 2014). Here, the ALJ ignored evidence that corroborates the claimant's subjective allegations with the physical examination findings. For instance, the ALJ noted that "clinicians typically documented findings within normal limits throughout the relevant period but for obesity and abnormal monofilament findings on diabetic foot examination" (Tr. 16). But clinicians regularly documented dysesthesias in Plaintiff's lower legs and feet (Tr. 241, 243, 249, 253, 305, 319, 325). Also, the ALJ concluded that the "claimant did not require[ ] surgery or physical or *pain management therapy in 2016*" (Tr. 16) (emphasis added). While it is true that Plaintiff did not require surgery, the medical records suggest that Plaintiff's symptoms were intense and as limiting as alleged. Indeed, the medical records show that

Plaintiff had lower extremity pain at four different medical visits (Tr. 253, 299, 319, 325). The pain was so intense that Plaintiff's doctor had lab work ordered (Tr. 299).

Some courts have recognized that this situation involves addressing the "elephant in the room." The elephant is that "[a]t plaintiff's age, if the ALJ had found she were limited to sedentary work – a far easier conclusion to buy – she would be . . . disabled . . . ." *Constance S. v. Saul*, 389 F. Supp. 3d 583, 589 (N.D. Ill. 2019). Indeed, the following conclusion in *Bancolita v. Berryhill*, 312 F. Supp. 3d 737 (N.D. Ill. 2018), fits almost perfectly in this situation:

> While it seems a stretch, at least the way the ALJ articulated it, that Ms. Bancolita can perform work requiring her to be on her feet most of the day, could Ms. Bancolita handle a job that did not require nearly so much walking and standing—a sedentary job? Perhaps, but the problem with that is, as a person closely approaching advanced age, with a high school education, and no transferable work skills, Ms. Bancolita would have to be found disabled under the grid given a capacity for a full range of sedentary work. *Compare* 20 C.F.R. Part 404, Subpart P, App. 2, Table No. 1, Rule 201.12. with 20 C.F.R. Part 404, Subpart P, App. 2, Table No. 1, Rule 201.21. Once a person falls into the "closely approaching advanced age" category, the Commissioner assumes that there may be a serious effect on their ability to adjust to work other than the kind they are used to. 20 C.F.R. § 404.1563(d). As a result, a capacity for light work is just about the baseline RFC necessary for finding a person over 50 not disabled. Of course, when that person has lower extremity neuropathy and edema, and is obese, an ALJ has to do a better job than the ALJ did here of explaining how that person can be on their feet for six hours a day, five days a week, every week.

*Id.* at 745.

Similarly, the ALJ must do a better job than the ALJ did here of explaining how Plaintiff can be on her feet for six hours a day, five days a week, every week when she has medically documented diabetic neuropathy. Accordingly, the Court finds that the ALJ failed to build the required "logical bridge" from the evidence to his conclusions as

to Plaintiff's RFC.

## II. Hidradenitis Suppurativa Listing

Plaintiff also argues that the ALJ failed to consider whether her hidradenitis suppurativa met or equaled Listing 8.06. Defendant does not dispute her assertion that Listing 8.06 is the relevant listing.

In order to be found presumptively disabled, a claimant must meet all of the criteria in the listing; an impairment "cannot meet the criteria of a listing based only on a diagnosis." 20 C.F.R. §404.1525(d). The claimant bears the burden of proving that she meets or equals a listed impairment. *Filus v. Astrue*, 694 F.3d 863, 868 (7th Cir. 2012); *Maggard v. Apfel*, 167 F.3d 376, 380 (7th Cir. 1999).

The requirements of Listing 8.06 are "Hidradenitis suppurativa, with extensive skin lesions involving both axillae, both inguinal areas, or the perineum that persist for at least 3 months despite continuing treatment as prescribed." 20 C.F.R. § Pt. 404, Subpt. P, App. 1. Extensive skin lesions are defined in the introductory paragraph to the 8.00 series as follows:

> Extensive skin lesions are those that involve multiple body sites or critical body areas, and result in a very serious limitation. Examples of extensive skin lesions that result in a very serious limitation include but are not limited to:
>
> a. Skin lesions that interfere with the motion of your joints and that very seriously limit your use of more than one extremity; that is, two upper extremities, two lower extremities, or one upper and one lower extremity.
>
> b. Skin lesions on the palms of both hands that very seriously limit your ability to do fine and gross motor movements.
>
> c. Skin lesions on the soles of both feet, the perineum, or both inguinal areas

> that very seriously limit your ability to ambulate.

20 C.F.R. § Pt. 404, Subpt. P, App. 1., Paragraph 8.00.C.1.

The ALJ noted the following regarding Plaintiff's hidradenitis:

> Steven Musick, M.D., a dermatologist, treated the claimant during the relevant period of alleged disability for diagnosed hidradenitis suppurativa flares. The claimant called on March 14, 2016 and requested refill of prescribed Septra for a flare of one axilla. The claimant indicated she had not started prescribed Spironolactone. The claimant called on June 1, 2016 complaining of hidradenitis. Septra was refilled. The claimant admitted she was non-compliant and not taking prescribed Spironolactone. The claimant called and requested Septra on August 1, 2016. The claimant reported on examination of October 25, 2016 that hidradenitis was "greatly improved" with Spirolonolactone. On December 5, 2016, the claimant called and requested Z-pack for armpit hidradenitis. She stated that she had been prescribed 'Z-pack for something else and it cleared armpit right up.' Z-pack was prescribed (Exhibit 13F).

(Tr. 15-16). The ALJ continued noting:

> [O]pinion of Dr. Musick, the claimant's dermatologist, indicating in substance that the claimant's skin disorder met the listings, unpersuasive (Exhibit 8F). The June 27, 2018 medical source statement by Dr. Musick is the product of a pre-printed "check the block" form questionnaire from the claimant's attorney. The opinion is deficient because it is inconsistent with the physician's own medical treatment records during the relevant period of alleged disability (Exhibit 13F). Further, the opinion was done 18 months after the claimant's date last insured, is unsupported by the unremarkable physical examination findings noted above and the evidence as a whole, including the claimant's daily activities.

(Tr. 17).

The problem is there is relevant evidence that was ignored by the ALJ. Specifically, the medical records show that in June 2016 Plaintiff's hidradenitis included bilateral axillae (Tr. 415). By August 2016, Plaintiff still had both axillae (Tr. 419). And in October 2016, Plaintiff still had issues with her hidradenitis when she saw Dr. Musick (*Id.*). Dr.

Musick then filled out a form, where he confirmed that Plaintiff had bilateral axillae present for at least three months (Tr. 364-65). While the ALJ noted that Plaintiff's hidradenitis "greatly improved" and acknowledged the testimony regarding a Z-pack clearing the issue right up (Tr. 16), the medical records showed that Plaintiff was still suffering from hidradenitis, and was only mentioning the Z-pack's success because she needed further treatment (Tr. 418). Because of these errors, this case must be remanded.

## Conclusion

The Commissioner's final decision denying Plaintiff's application for social security disability benefits is **REVERSED** and **REMANDED** to the Commissioner for rehearing and reconsideration of the evidence, pursuant to sentence four of 42 U.S.C. §405(g).

The Clerk of Court is directed to enter judgment in favor of Plaintiff.

**IT IS SO ORDERED.**

DATED: July 13, 2021

_____
**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**